# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 5151 | **DATE** | 12/20/2012 |
| **CASE TITLE** | Yahnke vs. County of Kane | | |

**DOCKET ENTRY TEXT**

The Court denies Defendant Patrick Perez's motion to dismiss [13].

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

On June 27, 2012, Plaintiff Steven Yahnke filed the present three-count Complaint against Defendants Kane County and the Kane County Sheriff Patrick Perez ("Sheriff Perez" or "Perez") alleging a First Amendment political affiliation claim (Count I) and a Fourteenth Amendment due process claim (Count II). *See* 28 U.S.C. § 1331, 42 U.S.C. § 1983. In the alternative, Yahnke brings a retaliatory discharge claim under Illinois law (Count III) pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). On November 11, 2012, the Court granted Defendant Kane County's motion to dismiss. Nevertheless, Defendant Kane County remains in this lawsuit as an indemnitor to the Sheriff of Kane County in the event that the Sheriff of Kane County is liable. Before the Court is Defendant Sheriff Perez's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Sheriff Perez's motion.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

## BACKGROUND

In the fall of 2001 both Perez and Yahnke – who were Kane County Deputy Sheriffs at the time – were interested in running against Sheriff Kenneth Ramsey, a Republican, for Sheriff of Kane County. (R. 1, Compl. ¶ 10.) Yahnke alleges that he would have run against Sheriff Ramsey in the Republican primary. (*Id*. ¶ 11.) Further, Yahnke maintains that he hired a campaign manager and had approximately $15,000 in money and pledges, but ultimately decided that he would not pursue the campaign. (*Id*. ¶ 12.) After Yahnke decided not to pursue his campaign for Sheriff, Perez, as a Democrat, ran against Sheriff Ramsey and lost in the general election. (*Id*. ¶ 13.)

After Sheriff Ramsey resigned in the spring of 2006, Perez planned to run unopposed as a Democrat. (*Id*. ¶ 14.) Also, Joe Pena ("Pena') announced that he would run on the Republican ticket for Sheriff of Kane County. (*Id*.) At that time, Yahnke tried to convince Perez to run as a Republican, but Perez refused to do so. (*Id*. ¶ 15.) Kevin Williams ("Williams") then announced that he was running against Pena in the Republican primary. (*Id.* ¶ 16.) At that time, Yahnke vocally supported Williams during the Republican primary. (*Id.* ¶ 17.) In the fall of 2006, Williams won the Republican nomination. (*Id.* ¶ 18.) Yahnke alleges that he continued to vigorously and vocally support Williams' campaign for Sheriff of Kane County after the primary, including, but not limited to, raising funds, attending campaign meetings, and placing signs. (*Id.* ¶ 19.) On December 2006, Perez won the election and became the Sheriff of Kane County. (*Id. ¶* 20.)

On June 28, 2007, just over six months after Perez was elected Sheriff, Yahnke was injured on the job. (*Id.* ¶ 21.) Yahnke further alleges that after he was injured "a multitude of fictitious complaints and investigations arose into Yahnke's job, including, but not limited to: his previously approved secondary employment, his alleged failure to submit a travel request when off work due to his work injury, his comp time, and his light duty work which had previously been granted through the chain of command." (*Id*. ¶ 22.)

In 2008, Sheriff Perez selected Steven Ziman ("Ziman") to hold the position of Undersheriff. (*Id*. ¶ 23.) Thereafter, Ziman was second in command to Perez. (*Id*.) Yahnke alleges that during the discussion of what discipline Yahnke would receive based upon the fictitious complaints, Ziman asked Sheriff Perez what type of discipline he would give Yahnke, to which Perez responded, "I am going to fire him because some day he is going to run against me for Sheriff." (*Id*. ¶ 24.) In addition, Yahnke alleges that upon information and belief, Perez thought that out of all the possible Republican candidates for Sheriff, Yahnke stood the best chance of beating him. (*Id*. ¶ 25.) On October 28, 2008, Perez terminated Yahnke's employment. (*Id*. ¶ 27.) In addition,

Yahnke maintains that the first time he discovered that Perez stated he wanted to fire Yahnke for his political affiliation was during Ziman's deposition held on March 27, 2012. (*Id.* ¶ 26.)

## ANALYSIS

I.     **First Amendment Patronage Claim – Count I**

In Count I of his Complaint, Yahnke brings a First Amendment political affiliation claim. *See Branti v. Finkel,* 445 U.S. 507, 513, 515-16, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). It is well-established "that governments may not base employment decisions such as promotions, transfers, and recalls for low-level employees on political affiliation or support; to do so would be an impermissible infringement on the public employees' First Amendment rights." *Moss v. Martin,* 614 F.3d 707, 709 (7th Cir. 2010); *see also Davis v. Ockomon,* 668 F.3d 473, 477 (7th Cir. 2012). "Although the First Amendment prohibits government employers from taking most employees' political views into consideration when making job decisions, the Supreme Court has long recognized an exception to that rule for positions that involve confidential or policymaking responsibilities." *Moss,* 614 F.3d at 711.

In Sheriff Perez's motion to dismiss, he argues that Yahnke's First Amendment political affiliation claim must fail because sheriffs are allowed to take political considerations into account when terminating a deputy sheriff's employment. *See Upton v. Thompson,* 930 F.2d 1209 (7th Cir. 1991). In *Upton*, the Seventh Circuit considered whether the policymaker exception to the First Amendment's ban on patronage dismissals applied to deputy sheriffs. *See id.* at 1210-11. In particular, the issue in *Upton* concerned "the First Amendment claims of deputy sheriffs who had been dismissed for actively supporting unsuccessful candidates in the prior election." *Wallace v. Benware,* 67 F.3d 655, 659 (7th Cir. 1995). Based on the policymaker exception to the First Amendment's ban on patronage dismissals, the *Upton* court concluded that "a sheriff may use political considerations when determining who will serve as deputy sheriff." *Id.* at 1218; *see also Dimmig v. Wahl,* 983 F.2d 86, 87 (7th Cir. 1993) ("Illinois sheriffs do not violate the First Amendment by taking political considerations into account when deciding whether to fire a particular deputy sheriff.").

In response, Yahnke argues that *Upton* and its progeny are outdated and distinguishable. In particular, Yahnke points to later Seventh Circuit cases that explain and narrow the scope of *Upton's* and *Dimmig*'s holdings. More specifically, the Seventh Circuit has explained:

> In this circuit, we have recognized that sheriff's deputies in small police departments who are closely connected to the sheriff possess obvious decisionmaking roles: "[p]articularly in a small department, a sheriff's core group of advisors will likely include his deputies." *Upton,* 930 F.2d at 1215. We have since applied this principle to the patronage firing of a deputy sheriff for LaSalle County, Illinois. *Dimmig,* 983 F.2d at 86. In that case, we concluded that the duties of the deputy sheriff were so obviously associated with decisionmaking that the sheriff was entitled to fire him based on political considerations.

*Kolman v. Sheahan,* 31 F.3d 429, 432 (7th Cir. 1994). The *Kolman* decision further explained, however, that other cases were not so clear-cut and that *Upton* and *Dimmig* did not create a per se rule. *See id.*; *see also Flenner v. Sheahan,* 107 F.3d 459, 463 (7th Cir. 1997) ("As early as 1975, this court rejected the notion that labels or job titles are relevant to the inquiry into whether patronage dismissal is permissible."). Indeed, whether deputy sheriffs, especially in large counties, are involved in policy or decision making is usually a question of fact. *See Kolman,* 31 F.3d at 432; *see also Fuerst v. Clarke,* 454 F.3d 770, 772-73 (7th Cir. 2006).

Viewing Yahnke's allegations and all reasonable inferences in his favor, he has sufficiently alleged that he did not have close contact with any Kane County policymakers, did not have highly confidential communications with any Kane County policymakers, did not have autonomous or discretionary authority, was subject to levels of management, and had no meaningfully input or authority on policy making issues. (Compl. ¶¶ 35- 40.) Based on Yahnke's allegations in his Complaint that Perez terminated his employment in violation of the First Amendment due to his political affiliation, he has sufficiently alleged a right to relief under the First Amendment that is plausible on its face, namely, he has alleged "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The Court therefore denies Defendant's motion to dismiss Count I.

## II.    Due Process Claim – Count II

### A.    Claim Preclusion

In Count II, Yahnke alleges a due process claim against Sheriff Perez in both his official and individual capacities. Sheriff Perez moves to dismiss Yahnke's due process claim based on res judicata, also known as claim preclusion. In particular, after Sheriff Perez terminated Yahnke's employment, Yahnke's union, the Policeman's Benevolent Labor Committee ("Union"), filed a lawsuit on Yahnke's behalf against Kane County, Sheriff Perez, and Karen McConnaughay, Chair of Kane County, to compel arbitration. The Kane County trial court dismissed the complaint to compel arbitration and the Union appealed. Subsequently, the Illinois Appellate Court upheld the trial court's dismissal on the basis that the motion to compel arbitration was moot. The Illinois Appellate Court specifically stated:

> We also observe that our holding is limited: on this record, plaintiff has failed to raise an issue of whether it is entitled to arbitration. Whether Yahnke's firing may be contested by other means is not before us, and any other possible avenues of relief are not foreclosed by our judgment.

*Policemen's Benevolent Labor Cmte. v. County of Kane, et al.,* 2012 Ill.App. Unpub. LEXIS 2006, at *11 (2d Dist. 2012).

"In general, the doctrine of claim preclusion or res judicata bars a party from asserting a claim that has already been resolved in another lawsuit between the same parties or those in privity with them, and the doctrine reaches both claims that were actually asserted in an earlier lawsuit and those that could have been asserted but were not." *Russian Media Group, LLC v. Cable Am., Inc.,* 598 F.3d 302, 310 (7th Cir. 2010). "The doctrine of claim preclusion is premised on the idea that, when a claim has been fully litigated and come to judgment on the merits, finality trumps." *In re Ingersoll, Inc.,* 562 F.3d 856, 861 (7th Cir. 2009); *see also Palka v. City of Chicago,* 662 F.3d 428, 437 (7th Cir. 2011). Illinois law applies under the circumstances because an Illinois court decided the earlier judgment. *See Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). "In Illinois, claim preclusion requires: (1) 'a final judgment on the merits rendered by a court of competent jurisdiction'; (2) 'an identity of cause of action'; and (3) 'an identity of parties or their privies.'" *Id.* (quoting *River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 889 (1998)).

Sheriff Perez's claim preclusion argument fails because the Illinois Appellate Court's decision was not a final judgment on the merits under the first requirement of claim preclusion. In fact, the Illinois Appellate Court acknowledged that the judgment was not on the merits when it stated that the holding was limited to whether Yahnke could compel arbitration. *See Policemen's Benevolent Labor Cmte.,* 2012 Ill.App. Unpub. LEXIS 2006, at *10. In particular, the Illinois Appellate Court explained that based on the fact that Yahnke no longer worked for Defendants, the motion to compel arbitration was moot "because compelling the arbitration of the sole

grievance in the case would serve no purpose and provide plaintiff and Yahnke with no meaningful relief." *Id.* Because there was no final judgment on the merits in the Illinois action, the Court denies Sheriff Perez's motion to dismiss Yahnke's due process claim brought against Sheriff Perez based on claim preclusion.

### B. Relation Back – Rule 15(c)

Next, Sheriff Perez contends that Yahnke cannot bring a due process claim against him in his individual capacity because in 2009 Yahnke filed a complaint in state court – that Yahnke later voluntarily dismissed in April 2012– against Sheriff Perez in his official capacity, but not in his individual capacity. More specifically, Sheriff Perez argues that Yahnke cannot bring a due process claim against him in his individual capacity because the new allegation does not relate back to the state court complaint pursuant to Federal Rule of Civil Procedure 15(c).

"Under Illinois law as under federal law, an amendment relates back when it arises out of the same transaction or occurrence set up in the original pleading." *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 515 (7th Cir. 2011) (quoting *Phillips v. Ford Motor Co.,* 435 F.3d 785, 788 (7th Cir. 2006)). The purpose of the relation back doctrine is to "balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.,* ___ U.S.___, 130 S.Ct. 2485, 2494, 177 L.Ed.2d 48 (2010) (citing Advisory Committee's 1966 Notes 122; 3 Moore's Federal Practice §§ 15.02[1], 15.19[3][a] (3d ed. 2009)). Whether to allow a party to amend a complaint under the relation back doctrine is left to the district court's discretion. *See Springman v. AIG Mktg., Inc.,* 523 F.3d 685, 690 (7th Cir. 2008).

Despite Defendant's arguments to the contrary, the Seventh Circuit has identified "a change in capacity as constituting one type of case where the amended complaint related back to the date of the original complaint." *Hill v. Shelander*, 924 F.2d 1370, 1376 (7th Cir. 1991) (citing *Wood v. Worachek,* 618 F.2d 1225, 1229 (7th Cir. 1980)). In short, under Rule 15(c), "a plaintiff may amend the complaint to change the legal capacity in which a defendant is sued." *Id.* at 1377. Moreover, because Defendant received notice of the original action and will not be prejudiced because this case is in its early stages, Yahnke has fulfilled Rule 15(c)(1)(C)'s requirements.

Nonetheless, Defendant argues that the statute of limitations has run on Yahnke's individual capacity claim. *See Gomez v. Randle,* 680 F.3d 859, 864 (7th Cir. 2012) ("the statute of limitations for a § 1983 claim in Illinois is two years."). Because the relation back doctrine applies to Yahnke's claim against Sheriff Perez in his individual capacity and Yahnke's original complaint filed in 2009 was timely, Sheriff Perez's argument fails. *See Williams v. Lampe,* 399 F.3d 867, 870 (7th Cir. 2005). The Court therefore denies Sheriff Perez's motion to dismiss Count II.

### III. Retaliatory Discharge Claim – Count III

In the alternative, Yahnke alleges a retaliatory discharge claim in Count III of the Complaint. Specifically, Yahnke maintains that Sheriff Perez terminated his employment because he filed worker's compensation claims. "To prevail on a claim of retaliatory discharge, the plaintiff has the burden of proving three elements: '(1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act.'" *Beatty v. Olin Corp.,* 693 F.3d 750, 753 (7th Cir. 2012) (quoting *Clemons v. Mech. Devices Co.,* 184 Ill.2d 328, 235 Ill.Dec. 54, 704 N.E.2d 403, 406 (1998)).

Instead of addressing Yahnke's allegations under the framework of the federal notice pleading standards, Sheriff Perez's arguments concern factual disputes, and, as the Seventh Circuit explained over 25 years ago, "the

defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir. 1987). This holds true after the Supreme Court's decisions in *Twombly* and *Iqbal*. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."); *Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011) ("In reviewing a plaintiff's claim, the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor.").

Meanwhile, Yahnke has sufficiently alleged his retaliatory discharge claim raising his right to relief above the speculative level. *See Twombly,* 550 U.S. at 555. In his Complaint, Yahnke asserts that after he was injured on the job, he filed two separate claims under the Illinois Worker's Compensation Act, 820 ILCS 305/1 *et seq.* (the "Act"). (Compl. ¶¶ 21, 70.) Also, Yahnke alleges that after his injury, a number of fictitious complaints and investigations arose concerning his employment, including his failure to submit a travel request when he was off work due to his injury. (*Id.* ¶ 22.) Yahnke further contends that his termination was the result of exercising his rights under the Act in contradiction of Section 305/4(h) of the Act and the public policy of the State of Illinois. (*Id.* ¶ 71.) Pursuant to these allegations and Yahnke's Complaint as a whole, Yahnke has sufficiently alleged his straight-forward retaliatory discharge claim under the federal pleading standards. *See Richards v. Mitcheff,* 696 F.3d 635, 638 (7th Cir. 2012) ("complaint that invokes a recognized legal theory" and "contains plausible allegations on the material issues [] cannot be dismissed under Rule 12.").

On a final note, the Court reminds the parties that arguments made for the first time in a reply brief are waived. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571 (7th Cir. 2012). "The underlying concern is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Hernandez v. Cook County Sheriff's Office,* 634 F.3d 906, 913 (7th Cir. 2011).