# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN YAHNKE, | ) |
|     Plaintiff, | ) |
| | )   Case No. 12 C 5151 |
|     v. | ) |
| | ) |
| COUNTY OF KANE,[1] KANE COUNTY | ) |
| SHERIFF PATRICK PEREZ, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 27, 2012, Plaintiff Steven Yahnke ("Yahnke") filed a three-count Complaint against Defendants Kane County and Kane County Sheriff Patrick Perez ("Sheriff Perez" or "Perez") alleging a First Amendment political affiliation claim (Count I) and a Fourteenth Amendment due process claim (Count II). *See* 28 U.S.C. § 1331, 42 U.S.C. § 1983. In the alternative, Yahnke brings a retaliatory discharge claim under Illinois law (Count III) pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Before the Court is Yahnke's motion to compel discovery and motion for sanctions brought pursuant to Federal Rule of Civil Procedure 37. For the following reasons, the Court, in its discretion, grants in large part and denies in part Yahnke's motion to compel. The Court denies Yahnke's motion for sanctions without prejudice. Defendant must produce the OPS files and grievances against Sheriff Perez, as discussed below, to the Court for an in camera review by no later than September 5, 2013. The parties must file an agreed upon protective order addressing Defendant's HIPAA concerns

---

[1] On November 6, 2012, the Court granted Defendant Kane County's motion to dismiss. Nevertheless, Defendant Kane County remains in this lawsuit as an indemnitor to the Sheriff of Kane County in the event that the Sheriff is liable.

on or before September 11, 2013.  After the Court enters the protective order, Defendant must produce the discovery discussed in this order by no later than September 25, 2013.

In addition, the Court denies Defendant's motion for summary judgment and Defendant's motion for leave to file a motion for summary judgment without prejudice with leave to reinstate after Defendant has complied with this discovery order.  Moreover, the Court strikes Defendant's Rule 56.1 Statement of Facts for failing to comply with Rule 56.1's requirements. *See Keeton v. Morningstar, Inc.,* 667 F.3d 877, 883-84 (7th Cir. 2012) (district courts are entitled to strict compliance with Local Rule 56.1).  Defendant, for example, relies upon Yahnke's allegations in his Complaint as evidence supporting his facts.  Allegations in a complaint, however, are not evidence, and courts may only consider admissible evidence when determining summary judgment motions.  *See Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009); *Nisenbaum v. Milwaukee County,* 333 F.3d 804, 810 (7th Cir. 2003).  Defendant's bare-boned legal memorandum in support of his summary judgment motion fares no better because there is no fact or analysis section, but simply numbered paragraphs with little or no explanation of how the law applies to the facts of this case.  *See Malec v. Sanford,* 191 F.R.D. 581, 585 (N.D. Ill. 2000) ("A memorandum in support of (or in opposition to) summary judgment preferably contains two major parts: a fact section and an analysis section.  In turn, the analysis section should contain a review of the relevant legal standards supported by citation to caselaw and a thorough application of that law to the specific facts of the case.").

The Court now turns to the present motion to compel.

**LEGAL STANDARD**

The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras,* 585 F.3d 1061, 1075 (7th Cir. 2009). Accordingly, "[c]ourts commonly look unfavorably upon significant restrictions placed upon the discovery process." *Sauer v. Exelon Generation Co., LLC,* 280 F.R.D. 404, 407 (N.D. Ill. 2012) (citation omitted). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Indeed, it is well-established that:

> The very integrity of the civil justice system depends on compliance with the discovery rules. Discovery cannot be a game of hide-and-seek. Our discovery system depends in large part on self-reporting. When discovery requests are made by a party, the party to whom the request is made has an obligation to respond accurately and fully.

*Hogue v. Fruehauf Corp.*, 151 F.R.D. 635, 639 (C.D. Ill. 1993).

In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.,* 95 F.3d 492, 496 (7th Cir. 1996). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006). "The burden is not satisfied by a 'reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is

neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Osada v. Experian Info. Solutions, Inc.,* 290 F.R.D. 485 (N.D. Ill. 2012) (citation omitted). Finally, the Court has broad discretion when resolving discovery disputes. *See Central States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.,* 674 F.3d 630, 636 (7th Cir. 2012).

## BACKGROUND

According to the allegations in Yahnke's Complaint, in the fall of 2001 both Perez and Yahnke – who were Kane County Deputy Sheriffs at the time – were interested in running against Sheriff Kenneth Ramsey, a Republican, for Sheriff of Kane County, Illinois. (R. 1, Compl. ¶ 10.) Yahnke wanted to run against Sheriff Ramsey in the Republican primary, and thus, he hired a campaign manager and had approximately $15,000 in money and pledges. (*Id.* ¶ 11.) Sometime thereafter, Yahnke decided that he would not pursue the campaign. (*Id.* ¶ 12.) After Yahnke decided not to pursue his campaign for Sheriff, Perez, as a Democrat, ran against Sheriff Ramsey and lost in the general election. (*Id.* ¶ 13.)

After Sheriff Ramsey resigned in 2006, Perez planned to run unopposed as a Democrat. (*Id.* ¶ 14.) Also, Joe Pena ("Pena") announced that he would run on the Republican ticket for Sheriff of Kane County. (*Id.*) At that time, Yahnke tried to convince Perez to run as a Republican, but Perez refused to do so. (*Id.* ¶ 15.) Meanwhile, Kevin Williams ("Williams") then announced that he was running against Pena in the Republican primary and Yahnke vocally supported Williams during the Republican primary. (*Id.* ¶¶ 16, 17.) Williams won the Republican nomination and Yahnke continued to vigorously and vocally support Williams' campaign for Sheriff of Kane County after the primary, including, but not limited to, raising funds, attending campaign meetings, and placing signs. (*Id.* ¶¶ 18, 19.) On December 2006,

4

Perez won the election and became the Sheriff of Kane County. (*Id.* ¶ 20.)

On June 28, 2007, just over six months after Perez was elected Sheriff, Yahnke was injured on the job. (*Id.* ¶ 21.) Yahnke alleges that after he was injured "a multitude of fictitious complaints and investigations arose into Yahnke's job, including, but not limited to: his previously approved secondary employment, his alleged failure to submit a travel request when off work due to his work injury, his comp time, and his light duty work which had previously been granted through the chain of command." (*Id.* ¶ 22.)

In 2008, Sheriff Perez sought out Steven Ziman ("Ziman") to hold the position of Undersheriff. (*Id.* ¶ 23.) Thereafter, Ziman was second in command to Perez. (*Id.*) Yahnke alleges that during the discussion of what discipline would be meted out to Yahnke based upon the fictitious complaints, Ziman asked Sheriff Perez what type of discipline he would give Yahnke, to which Perez responded, "I am going to fire him because some day he is going to run against me for Sheriff." (*Id.* ¶ 24.) In addition, Yahnke alleges that upon information and belief, Perez thought that out of all the possible Republican candidates for Sheriff, Yahnke stood the best chance of beating him. (*Id.* ¶ 25.) On October 28, 2008, Perez terminated Yahnke's employment. (*Id.* ¶ 27.)

## ANALYSIS

On January 24, 2013, Yahnke tendered Interrogatories and Requests for Production of Documents to Defendant Perez, and on March 1, 2013, Defendant answered discovery. Yahnke maintains that on May 20, 2013, he sent correspondence pursuant to Local Rule 37.2 seeking full and complete answers to his discovery requests. According to Yahnke, from May 20, 2013 through July 24, 2013, the parties actively engaged in correspondence and conversations relating

to the outstanding discovery requests. Yahnke asserts that, to date, Defendant has refused to fully answer discovery, including: (1) failing to provide the Office of Professional Standards ("OPS") files relating to other employees; (2) failing to provide OPS training information and documentation; (3) failing to answer an interrogatory which requests Defendant to name all persons who held secondary employment during the relevant time period; (4) failing to produce information relating to other employees who had worker's compensation claims; (5) failing to provide grievances filed directly against the Sheriff; and (6) withholding documents by claiming privileged without providing a privilege log. The Court addresses each discovery request in turn.

**I.     OPS Files and Training Materials**

First, Yahnke maintains that prior to his termination on October 28, 2008, OPS investigated him. Yahnke explains that Patrick Gengler was the Lieutenant of OPS during the time period relevant to this case and that Gengler testified at his deposition that OPS has an access database which compiles reportable information relating to all OPS investigations. Further, Gengler testified that OPS also creates excel spreadsheets identifying all complaints and investigations. On June 11, 2013, Defendant provided Plaintiff with a PDF version of the excel spreadsheet for 2007 to 2009 that redacted the names of the employees OPS investigated. Thereafter, on June 19, 2013, Yahnke requested that Defendant either undo the redactions or provide other identifying markers so that he could determine if any employee had multiple complaints. Defendant then responded by identifying by number, but not name, the employees who had multiple complaints brought against them. On June 24, 2013, Yahnke requested 11 OPS files. During a June 25, 2013, telephone conference, defense counsel advised Yahnke that

the union did not agree to release the files.  Also, defense counsel was not receptive to Yahnke's offer to enter into a protective order relating to these files.  To date, Defendant has failed to produce the requested OPS files.

In response, Defendant maintains that the 11 OPS files requested do not involve Yahnke, are not relevant to why Yahnke was fired, could not lead to admissible evidence about why Yahnke was fired, and contain private, personal information about other employees that the union does not want the Sheriff to disclose in this case.

Defendant has failed in his burden to establish why Yahnke's request for the requested 11 OPS files is improper.  *See Kodish,* 235 F.R.D. at 450.  Yahnke's request for the OPS files may be relevant because Defendant identified in an interrogatory answer that Yahnke's statements made during OPS investigation interviews, as well as a March 19, 2008 email, were the basis of the termination of his employment.  Therefore, reviewing the other OPS files may lead to the discovery of admissible evidence regarding whether other employees were similarly investigated, disciplined, or terminated.  *See E.E.O.C. v. Konica Minolta Bus. Solutions U.S.A., Inc.,* 639 F.3d 366, 369 (7th Cir. 2011) (Rule 26 standard of relevance broader than Federal Rule of Evidence 401); *Kodish,* 235 F.R.D. at 450 ("Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."). Due to the highly confidential nature of these documents, however, the Court directs Defendant to produce these OPS files to the Court for an in camera inspection by no later than September 5, 2013.  After reviewing these documents, the Court will make its final relevancy and confidentiality determinations.  Meanwhile, Yahnke has not sufficiently explained why the OPS training materials are relevant under Rule 26(b)(1), and thus the Court denies this aspect of

7

Yahnke's motion to compel.

## II. Interrogatory Answers Relating to Secondary Employment

Yahnke maintains that Defendant refuses to completely answer Interrogatory 15 which stated as follows:

> Please identify all of Defendant's employees from 2006 through present who have requested, been approved, been denied and/or you are aware had secondary employment, in doing so please identify:
>
> a. Their full name, rank and title;
> b. Their secondary employer;
> c. That nature of their secondary employment;
> d. The date they requested secondary employment approval;
> e. The date approval or denial was given;
> f. The format in which approval or denial was given;
> g. Documents in which approval or denial is noted; and
> h. The date said employee commenced work with the secondary employer.

In response, Defendant objected stating:

> The request is overbroad and burdensome because there is no "central file" of requests for secondary employment kept by the Kane County Sheriff's Office. Without waiving said objection, the Sheriff is only awaare [sic] of one other employee who requested permission for secondary employment as a Chief or head of another entity's police department. That employee was Gary Walton, and his request was denied on 4/26/06.

Yahnke explains that information concerning other employees — not just Gary Walton — is relevant because the events surrounding his termination began when he was on worker's compensation and was ordered to cease his secondary employment. Yahnke contends that it is necessary to review these files to determine whether other employees were ordered to cease their secondary employment. The Court agrees. Moreover, Defendant has not established that Yahnke's request is overly broad or burdensome based on the lack of a "central file." *See Osada,* 290 F.R.D. at 485. If, after reviewing personnel files, there are no other employees who

meet the criteria in Interrogatory Number 15 as Defendant suggests, Defendant may answer as such and provide Yahnke with an affidavit of completeness. The Court therefore grants Yahnke's motion to compel Defendant to answer Interrogatory Number 15.

## III.     Worker's Compensation Claims of Similarly Situated Employees

Yahnke further explains that at Lieutenant Alan Swanson's deposition on August 3, 2013, he testified that it was common for the Sheriff to assign light duty to employees who were unable to work due to injuries requiring worker's compensation. Thereafter, Yahnke requested that Defendant provide a list of employees from 2006-09 who were on worker's compensation or disability. To date, Defendant has not produced this information and argues that this information is not relevant to whether Plaintiff was or should have been offered light duty work.

Once again, Defendant's view of relevance in the context of discovery is too narrow. Yahnke's request is relevant to determine if other employees who were on worker's compensation were offered light duty work based on his theory that he was unfairly terminated. *See Kodish,* 235 F.R.D. at 450 ("the scope of discovery should be broad in order to aid in the search for truth"). Meanwhile, Defendant's arguments concerning HIPAA violations should be considered when the parties draft their agreed protective order. The Court therefore grants Yahnke's motion to compel the list of employees that Yahnke requested on July 16, 2013.

## IV.     Grievances Filed Against Sheriff

In his motion to compel, Yahnke states that Officer Christopher Rachaj, who is the union president, testified at his June 18, 2013, deposition that approximately 15 grievances have been filed against Sheriff Perez for violating the union's Collective Bargaining Agreement ("CBA"). The next day, Yahnke requested copies of these grievances. In response, Defendant maintains

9

that most grievances are filed against the Sheriff's Office, not the Sheriff individually. Yahnke, however, did not request all grievances, but only grievances filed against Sheriff Perez individually. Moreover, Defendant's argument that these grievances are not relevant to this case because Yahnke did not grieve his termination is unavailing because Yahnke filed numerous other grievances related to the investigations into his alleged misconduct. Thus, these grievances may be relevant. *See Kodish,* 235 F.R.D. at 450 ("Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."). Due to confidential nature of these grievances, the Court directs Defendant to produce these grievances to the Court for an in camera inspection by no later than September 5, 2013. After reviewing these grievances, the Court will make its final determination on the relevancy and confidentiality of these documents.

V. **Withholding Documents**

Last, Yahnke maintains that Defendant withheld documents based on privilege, yet failed to provide a privilege log. To clarify, at Undersheriff Ziman's deposition he testified that he received email communications and memoranda from the State's Attorney's Office relating to Yahnke. When Yahnke requested that Defendant produce these documents, Yahnke also requested a privilege log if Defendant objected to producing them. Instead of providing a privilege log, defense counsel responded that he could not provide a privilege log because he did not have access to the emails and also stated that he would not produce the emails because the attorney-client privilege applies. Also, defense counsel stated that Yahnke was not entitled to communications between the State's Attorney's Office and the Sheriff's Office.

According to Yahnke, Defendant failed to identify the attorney communications and failed to provide a privilege log in answering the following interrogatories: 5, 6, 8, 9, 20 and 21. Also, Yahnke maintains that Defendant failed to identify attorney communication and failed to object based on privilege in responding to the following requests for production 7, 8, 14, 17, 18, 19, 20, 21, 22, 23, 28, and 29.

Under the liberal federal discovery rules, Defendant's counsel must do more than claim a privilege or state that he does not have the requested documents. First, once a party reasonably anticipates litigation, counsel has a duty to institute a litigation hold to preserve relevant information. *See YCB Int'l, Inc. v. UCF Trading Co., Ltd.*, 09 C 7221, 2012 WL 3069683, at *8 (N.D. Ill. June 12, 2012); *see also* Fed.R.Civ.P. 37, Advisory Committee Notes to 2006 Amendments ("When a party is under a duty to preserve information because of pending or reasonably anticipated litigation, intervention in the routine operation of an information system is one aspect of what is often called a 'litigation hold.' "). In fact, the failure to preserve information may lead to sanctions. *See Trask-Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 681 (7th Cir. 2008). In any event, defense counsel's response that he cannot access certain documents and emails in unavailing.

Next, if certain emails and documents are covered by the attorney-client privilege, Perez's counsel must provide Yahnke was a privilege log. To clarify, pursuant to Federal Rule of Evidence 501, federal common law governs privileges asserted in federal question lawsuits. *See Northwestern Mem. Hosp. v. Ashcroft,* 362 F.3d 923, 926 (7th Cir. 2004). "Federal common law recognizes the attorney-client privilege." *Kodish*, 235 F.R.D. at 452; *see also United States v. BDO Seidman, LLP,* 492 F.3d 806, 814-85 (7th Cir. 2007). "[I]n order for the attorney-client

11

privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *BDO Seidman,* 492 F.3d at 815. Moreover, "[t]he mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements." *United States v. BDO Seidman, LLP,* 337 F.3d 802, 811 (7th Cir. 2003). Accordingly, Defendant must provide a privilege log that identifies the following information for each separate document or email: "the date; the author and recipients, including their capacities; the subject matter of the document; the purpose for its production; and a specific explanation of why it is privileged." *Miyana Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 460 (N.D. Ill. 2008).

On a final note, the Court denies Yahnke's motion for sanctions without prejudice. If Yahnke wishes to renew his sanctions motion after Defendant complies with this order, he must offer the Court more than cursory arguments and provide legal authority for his claims. *See Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012) (undeveloped, conclusory, or unsupported arguments may be waived).

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion to compel in accordance with this order.

**Dated:** August 27, 2013

                                                        **ENTERED**

                                                        **AMY J. ST. EVE**
                                                      **United States District Court Judge**