# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN YAHNKE, | ) |
| Plaintiff, | ) |
| | ) Case No. 12 C 5151 |
| v. | ) |
| COUNTY OF KANE, et. al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 27, 2012, Plaintiff Steven Yahnke filed a three-count Complaint against Defendants Kane County and Kane County Sheriff Patrick Perez alleging a First Amendment retaliation claim (Count I) and a Fourteenth Amendment due process claim (Count II).[1] *See* 28 U.S.C. § 1331, 42 U.S.C. § 1983. In addition, Yahnke brings a retaliatory discharge claim under the Illinois Workers' Compensation Act pursuant to the Court's supplemental jurisdiction (Count III). *See* 28 U.S.C. § 1367(a).

Before the Court is Defendants' motion for summary judgment as to all counts of the Complaint and Plaintiff's cross-motion for partial summary judgment as to Count II brought pursuant to Federal Rule of Civil Procedure 56(a). Plaintiff also moves for partial summary judgment regarding Defendants' affirmative defenses 6-12 and moves to strike Defendants' affirmative defenses 1-5. For the following reasons, the Court grants Defendants' summary

---

[1] The Court rejects Defendants' statute of limitations argument and arguments based on res judicata and claim preclusion for the reasons stated in the Court's December 2012 Order. The Court need not address Defendants' perfunctory, undeveloped claim-splitting argument. *See Ripberger v. Corizon, Inc.*, 773 F.3d 871, 879 (7th Cir. 2014) (cursory, unsupported arguments are waived).

judgment motion and denies Plaintiff's partial motion for summary judgment as to Count II, dismissing Counts I and II with prejudice. The Court dismisses Count III without prejudice because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law retaliatory discharge claim. The Court further denies Plaintiff's partial summary judgment motion regarding affirmative defenses 6-12 and Plaintiff's motion to strike Defendants' affirmative defenses 1-5 as moot. Because the Court considered Plaintiff's arguments in his motion to strike Defendants' Rule 56.1 Statements of Fact within the context of the challenged facts, the Court denies Plaintiff's motion to strike as moot.

## BACKGROUND

### I. Parties

The Kane County Sheriff's Office employed Plaintiff Steven Yahnke as a Deputy Sheriff from August 1986 until Defendant Sheriff Patrick Perez terminated his employment on October 28, 2008. (R. 150, Pl.'s Rule 56.1(a) Stmt. Facts ¶¶ 3, 5; R. 148, Defs.' Rule 56.1(a) Stmt. Facts ¶ 1.) Defendant Kane County remains a party in this lawsuit as an indemnitor to the Sheriff of Kane County. (Pl.'s Stmt. Facts ¶ 4.) Defendant Sheriff Perez was the Kane County Sheriff from December 2006 through November 2014. (*Id.* ¶ 5.) Yahnke, along with other sergeants and patrol officers employed by the Kane County Sheriff's Office, were members of the Policeman's Benevolent Labor Committee (the "Union"). (Defs.' Stmt. Facts ¶ 75.)

### II. 2006 Election for Sheriff of Kane County

After the former Kane County Sheriff Ken Ramsey decided to resign in 2006, Sheriff Perez, who was then a Kane County Deputy Sheriff, decided that he was going to run for Kane County Sheriff. (R. 148-8, Defs.' Ex. 8, Ramsey Dep., at 5; R. 148-12, Defs.' Ex. 12, Perez

2

Dep., at 114-15.) At that time, Yahnke told several people that he intended to run for Kane County Sheriff, as well, and asked certain individuals about becoming his campaign manager and raising funds. (R. 169, Pl.'s Rule 56.1(b)(3)(A) Resp. ¶ 20.) Eventually, Yahnke decided not to run for office and Sheriff Perez defeated the Republican candidate Kevin Williams, whom Yahnke supported. (*Id*.; R. 148-7, Williams Aff. ¶ 2; R. 148-2, Defs.' Ex. 2, 10/15/08 grievance; Perez Dep., at 7.) Yahnke maintains that he had political aspirations to run for Kane County Sheriff and believes that Sheriff Perez terminated his employment because Sheriff Perez thought Yahnke would run against him in the future. (Defs.' Stmt. Facts ¶ 19.)

### III. OPS Investigation into Yahnke's Secondary Employment

In 2006, former Sheriff Ramsey granted Yahnke permission to work secondary employment as the Chief of Police for the small municipality of Maple Park, Illinois, on a trial basis, although Sheriff Ramsey had denied Yahnke's earlier requests to do so in 2003 and 2004 due to a potential conflict of interest. (Defs.' Stmt. Facts ¶ 33; Ramsey Dep., at 8-12.) On November 6, 2007, Undersheriff Stephen Ziman ordered Yahnke to cease any and all secondary employment, including working as the part-time Chief of Police in Maple Park, because Yahnke was on temporary total disability. (*Id.* ¶ 34, 35.) In the meantime, Sheriff Perez asked the Kane County State's Attorney's Office for a legal opinion as to whether the Office of Chief of Police of Maple Park was an incompatible position with the position of Kane County Deputy Sheriff or whether it presented a conflict of interest, after which an Assistant Kane County State's Attorney advised Sheriff Perez that it was incompatible and a conflict of interest. (*Id.* ¶¶ 37, 38.) On November 27, 2007, Sheriff Perez permanently revoked Yahnke's authority to act as Chief of Police of Maple Park. (*Id*. ¶ 38.)

Concerned that Yahnke was continuing to work for Maple Park after the Sheriff and Undersheriff directed him not to, the Sheriff's Office opened an Office of Professional Standards ("OPS") investigation into Yahnke's conduct. (*Id*. ¶ 57; R. 148-30, Defs.' Ex. 30, 9/2/08 OPS interview; Defs.' Exs. 31, 32, Collins' Rep.) In investigating Yahnke's conduct, the OPS investigator uncovered business and public records that Yahnke had continued to work as the Chief of Police for Maple Park after November 2007. (Defs.' Stmt. Facts ¶¶ 43, 44, 46, 50.) On September 2, 2008, the OPS investigator conducted Yahnke's interview regarding this investigation, at which time Yahnke's Union attorney and Union representative were present. (*Id*. ¶ 57; Defs.' Ex. 30, 9/2/08 OPS inter., at 1.) After the September 2008 investigative interview, the OPS investigator prepared reports setting forth the instances in which the investigator concluded that Yahnke had acted as the Chief of Police for Maple Park after November 2007. (*Id*. ¶¶ 58, 59.)

## IV. Yahnke's Termination

Pursuant to the Kane County Sheriff's Merit Commission Rules, the Sheriff's Office may file charges with the Merit Commission seeking removal of any employee for cause. (Pl.'s Stmt. Facts ¶ 8.) On October 7, 2008, Sheriff Perez sent correspondence to Yahnke attaching his written complaints that he had filed with the Merit Commission. (*Id.* ¶ 16.) Sheriff Perez's October 7, 2008, letter specifically notified Yahnke that he was recommending that the Merit Commission discharge Yahnke's employment based on his failure to display absolute honesty in regard to the OPS investigative interview of September 2, 2008, and for failing to follow Undersheriff Ziman's and Sheriff Perez's November 2007 orders to stop outside, secondary employment. (R. 163, Defs.' Rule 56.1(b)(3)(c) Stmt. Add'l Facts ¶ 1.) Also on October 7,

2008, Sheriff Perez notified Yahnke that he filed a complaint with the Merit Commission to discharge Yahnke based on his failure to display absolute honesty regarding an OPS investigation into his conduct in relation to comp time and overtime procedures. (Defs.' Stmt. Add'l Facts ¶ 2.) On October 15, 2008, the Merit Commission sent a letter to Yahnke advising him that Sheriff Perez had filed copies of the charges against him in which Sheriff Perez requested Yahnke's discharge and removal as an employee. (*Id.* ¶ 3.) In addition, the letter informed Yahnke that the Merit Commission had scheduled an October 27, 2008, hearing to review these charges. (*Id.*) The parties do no dispute that the October 27, 2008, hearing never took place. (Pl.'s Stmt. Facts ¶¶ 33, 34.) Instead, Sheriff Perez terminated Yahnke's employment on October 28, 2008. (*Id.* ¶ 19; Defs.' Stmt. Facts ¶ 1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). A court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).[2]

## ANALYSIS

**I.      First Amendment Claim—Count I**

In Count I of his Complaint, Yahnke brings a First Amendment retaliation claim in the context of his public employment with the Kane County Sheriff's Office. To establish a prima facie case of First Amendment retaliation, a public employee must show that: (1) his speech was constitutionally protected; (2) he suffered a deprivation as a result of his protected speech that was sufficiently adverse to deter the exercise of free speech; and (3) his speech was a substantial or motivating factor in the employer's decision. *See Graber v. Clarke,* 763 F.3d 888, 894-95 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). If the employee establishes a prima facie case, the burden shifts to the employer show that other factors influenced the decision, namely, that the decision would have been made absent the protected speech. *See Greene v. Doruff*, 660 F.3d 975, 978-79 (7th Cir. 2011) (citing *Mt. Healthy City Sch. Dist. Board of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); *Fleishman v. Continental Cas. Co.,* 698 F.3d 598, 604 (7th Cir. 2012) ("constitutional claims,

---

[2] Yahnke's argument that Sheriff Perez is not a credible witness is of no consequence at summary judgment. *See Williams v. City of Chicago,* 733 F.3d 749, 752 (7th Cir. 2013) ("Neither we nor the district court can resolve issues of credibility when deciding a motion for summary judgment or an appeal from its grant.").

6

such as First Amendment retaliation cases, continue to proceed under the *Mt. Healthy* burden-shifting framework."). In other words, "the defendant may then rebut that evidence by demonstrating that 'the harm would have occurred anyway,' even without the protected conduct." *Peele v. Burch,* 722 F.3d 956, 960 (7th Cir. 2013) (citation omitted). "If the defendant fails to carry that burden, the inference is that 'but for' causation (that is, a necessary condition) has been shown: the plaintiff would not have been harmed had his rights not been violated by the defendant." *Greene,* 660 F.3d at 979. On the other hand, if the defendant presents evidence of a legally permissible, non-political reason for its decision, the employee must then show that the defendant's stated reason was pretextual. *See Thayer v. Chiczewski,* 705 F.3d 237, 252 (7th Cir. 2012); *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir. 2011). "[T]his means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379; *see also Kidwell*, 679 F.3d at 969 (pretext is "a dishonest explanation, a lie rather than an oddity or an error") (citation omitted).

Assuming that Yahnke has established a prima facie case of First Amendment retaliation, the Court turns to the Sheriff's argument that he recommended Yahnke's discharge to the Merit Commission for a permissible, non-political reason. Specifically, the Sheriff presents evidence that he recommended Yahnke's termination to the Merit Commission for violating Kane County Sheriff's Department General Order 92-02, Regulation 07(e), requiring that all personnel be absolutely honest in all department dealings. In particular, the Sheriff asserts that Yahnke was not absolutely honest when the OPS investigator interviewed him regarding his employment as the Chief of Police of Maple Park, as well as in a March 19, 2008, email to Undersheriff Ziman

7

in which Yahnke represented that he had been compliant with the November 2007 order to cease all secondary employment, including acting as the Chief of Police for Maple Park. (Defs.' Stmt. Facts ¶¶ 49, 56-59.) At Yahnke's September 2, 2008, investigative interview, the OPS investigator asked Yahnke about several incidences pertaining to Yahnke's continued work for Maple Park after November 2007, as reflected by February 2008 Maple Park Police Committee meeting minutes and March and April 2008 Maple Park Board of Trustees meeting minutes. (Defs.' Stmt. Facts ¶¶ 44, 46, 50, 56-59.) More specifically, the minutes of the February 21, 2008, Maple Park Police Committee meeting reveal that "Chief Yahnke" presented a change to the Maple Park police budget. (*Id*. ¶ 44.) Yahnke's response to the OPS investigator's inquiry about these meeting minutes at his September 2008 investigative interview was that it was actually Officer Thomas Blincoe, the officer in charge, who presented the budget, although Yahnke did not specifically deny that he was acting as the Chief of Police, but instead stated that "I was primarily there to answer questions about the budget." (Defs.' Ex. 30, 9/2/08 OPS inter., at 17-20.) Also, the OPS investigator relied on other evidence, including the March 4, 2008, Village of Maple Park Trustee meeting minutes in which the trustees discussed Yahnke's position "with the Sheriff" stating that "things are not looking really good for Chief Yahnke right now" in the context of Yahnke's contractual obligations with Maple Park. (*Id*. ¶ 46.) In addition, when the OPS investigator asked Yahnke about an April 24, 2008, Maple Park police committee meeting at which Yahnke advised the committee that surplus guns from the federal government were donated to Maple Park, Yahnke clarified that he brought up the topic of the donated guns, but that it was not a "presentation." (*Id.* at 32-35.) Moreover, other evidence of Yahnke's continued work for Maple Park includes a February 2008 article from the local paper

newspaper, the Elburn Herald, reporting that Chief of Police Yahnke stated that the bars in Maple Park were complying with the recent smoking ban. (*Id*. ¶ 43.) Evidence in the record also reveals that Yahnke's misstatements and denials at the September 2, 2008, investigative interview formed the basis of Sheriff Perez's conclusion that Yahnke was not absolutely honest in all department dealings. (Defs.' Stmt. Add'l Facts ¶ 1.)

Because Sheriff Perez has produced evidence that he would have made the same decision in the absence of Yahnke's political ambitions, desire to run for Kane County Sheriff, or his support of Sheriff Perez's opponent in the 2006 election, "the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Thayer,* 705 F.3d at 252. "Showing pretext requires '[p]roof that the defendant's explanation is unworthy of credence.'" *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (citations omitted). *Id.* (citations omitted). To establish that the Sheriff's reason for discharging him is not worthy of credence, Yahnke must show that: (1) the Sheriff's justification has no basis in fact; (2) the reason is insufficient to warrant discharge; and (3) the justification is not the real reason for his discharge. *See Carter v. Chicago State Univ.,* 778 F.3d 651, 659 (7th Cir. 2015); *Vukadinovich v. Board of Sch. Trs. of No. Newton Sch. Corp.,* 278 F.3d 693, 700 (7th Cir. 2002).

Yahnke first argues that the Sheriff's reason lacks a factual basis arguing that "each and every one of Defendant's alleged uncontested material facts relating to Maple Park [is] either contested by Plaintiff or not relevant to the inquiry at hand." To clarify, Yahnke challenges numerous documents set forth by the Sheriff as hearsay, although many of these documents are excepted under the business records exception and public records exception, including the Maple

9

Park Police Committee meeting minutes and the Village of Maple Park Trustee meeting minutes. *See* Fed.R.Evid. 803(6), 803(8).

Further, Yahnke argues that other documents supporting the Sheriff's Rule Local Rule 56.1 Statements of Fact lack proper foundation, but fails to recognize that, even it this is true, the Court can take judicial notice of public records and historic facts. *See Papasan v. Allain,* 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Here, the Court takes judicial notice of the public records discussed above, including the Maple Park Police Committee minutes and the Maple Park Trustee meeting minutes. *See Weiler v. Village of Oak Lawn,* ___ F.Supp.3d ___, 2015 WL 1538498, at *5 n.2 (N.D. Ill. Mar. 31, 2015) (taking judicial notice of municipal ordinances and meeting minutes). In addition, several of the meeting minutes contain Yahnke's own statements regarding his work, and thus contain admissible statements of a party-opponent. *See* Fed.R.Evid. 801(d)(2)(A). The Court also takes judicial notice of an Elburn Herald newspaper article, *see Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012), which is self-authenticating. *See Castilho de Oliveira v. Holder,* 564 F.3d 892, 897 (7th Cir. 2009) (citing Fed.R.Evid. 902(6)). While the newspaper article is hearsay and the Court cannot consider it for the truth of the matters asserted in the article, the Court can consider it as notice to Sheriff Perez. *See, e.g., Young v. County of Cook,* 616 F.Supp.2d 834, 844 (N.D. Ill. 2009). Sheriff Perez was aware of the February 14, 2008, Elburn Herald newspaper article because the OPS investigator included it in his August 12, 2008, report entitled "Possible Acts of Insubordination/Failure to Display Absolute Honest" and in his September 2, 2008, report entitled "Investigative Interview." (R. 148-31, 148-32, Defs.' Exs. 31, 32.) In fact, when questioned about this article at the September 2, 2008, OPS investigative interview, Yahnke

10

admitted that he made the statements to the newspaper reporter in his capacity as Chief of Police of Maple Park, which is a Rule 801(d)(2)(A) admission by a party-opponent. (Defs.' Ex. 30, 9/2/08 OPS inter., at 15-16.)

Next, looking to whether the Sheriff's justifications are insufficient to warrant Yahnke's discharge and viewing the facts and all reasonable inferences in Yahnke's favor, by failing to follow Sheriff Perez's and Undersheriff Ziman's directive to stop his secondary employment, Yahnke's conduct amounts to insubordination. *See Vukadinovich*, 278 F.3d at 699 ("we have consistently held that insubordination constitutes a legitimate justification for an adverse employment action"). In addition, Yahnke's statements at his OPS interview in September 2008 and in his March 2008 email to Undersheriff Ziman that he was not working for Maple Park sufficiently support a violation of Kane County Sheriff's Department General Order 92-02, Regulation 07(e), requiring that all personnel be absolutely honest in all department dealings.

Last, Yahnke criticizes the OPS investigation into his secondary employment, pointing out that the OPS investigator did not interview numerous Village of Maple Park employees, including the mayor or other police officers. Yahnke also takes issue with the fact that the OPS investigator knew that Officer Thomas Blincoe was in charge of the Maple Park Police Department starting in November 2007. The fact that Officer Blincoe was officially "in charge" of the Maple Park Police Department does not refute the evidence in the record that Yahnke continued to work for the Maple Park Police Department after November 2007 in some capacity–
keeping in mind that Undersheriff Ziman had directed Yahnke to cease any and all secondary employment, not just his employment as Maple Park's Chief of Police. Moreover, Yahnke's

11

argument that the OPS investigation was flawed and that Sheriff Perez also investigated his alleged misconduct does not establish that the Sheriff's justification for recommending his discharge was a lie because the relevant question is not whether the reasons for terminating Yahnke's employment were inaccurate or unfair, but whether Sheriff Perez sincerely believed his explanation for recommending Yahnke's termination to the Merit Commission. *See Hobgood v. Illinois Gaming Board,* 731 F.3d 635, 645-46 (7th Cir. 2013). At his deposition, Sheriff Perez explained why he believed Yahnke continued to act as Maple Park's Chief of Police based on evidence that he had gathered regarding a May 2008 Maple Park Board of Trustees meeting at which Yahnke attended and discussed police coverage for the Memorial Day 2008 weekend. (R. 148-12, Perez Dep., at 379, 383-87.) In short, the alleged flaws in the OPS investigation and Sheriff Perez's personal investigation do not support the conclusion that Sheriff Perez's reason for terminating Yahnke's employment was a lie or that the Sheriff's reason was unreasonable. *See id.* at 646; *Kidwell*, 679 F.3d at 969. On a final note, Yahnke's March 19, 2008, email to Undersheriff Ziman states that Yahnke would be leaving his employment at the Kane County Sheriff's Office in 2013, which further supports the conclusion that a reasonable jury would not infer that the real reason Sheriff Perez recommended Yahnke's discharge was Yahnke's desire to run for Kane County Sheriff in the future. (Defs.' Stmt. Facts ¶ 49; R. 148-23, Defs.' Ex. 23, Yahnke 3/19/08, email.) As such, Yahnke has failed to produce evidence upon which a rational finder of fact could infer that Sheriff Perez's proffered reason, namely, Yahnke's continued secondary employment with Maple Park, is a lie and that Sheriff Perez's real reason for recommending his discharge was politically motivated. *See Vukadinovich*, 278 F.3d at 700 (subjective belief that action was retaliatory and the proffered

12

reason pretext, does not create a genuine issue of material fact for trial).

Because Yahnke has not presented sufficient evidence creating a genuine factual dispute for trial that the Sheriff's proffered reason for his termination was pretextual and that the real reason for Yahnke's discharge was his political affiliation or ambitions, the Court grants Defendants' summary judgment as to Yahnke's First Amendment claim in Count I and dismisses Count I with prejudice.[3]

## III. Fourteenth Amendment Procedural Due Process Claim — Count II

In Count II of his Complaint, Yahnke alleges that he had a protected property interest in his continued employment with Kane County, and that prior to his termination, he was not afforded a hearing in front of the Merit Commission or the opportunity for independent arbitration. Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). There are two steps in analyzing Yahnke's procedural due process claim: (1) whether the Sheriff deprived him of a protected property interest; and (2) what process is due under the circumstances. *See Bryn Mawr Care, Inc. v. Sebelius*, 749 F.3d 592, 598 (7th Cir. 2014); *Leavell v. Illinois Dep't Natural Res.*, 600 F.3d 798, 804 (7th Cir. 2010). When determining what process is due in the context of unauthorized deprivations of a protected property right, if there is an adequate post-deprivation state law remedy available, this remedy is all the process a plaintiff

---

[3] Because Yahnke has failed to establish that the Sheriff's reason for recommending his termination based on his statements made in regard to his secondary employment is pretextual, the Court need not address the Sheriff's second reason for recommending Yahnke's discharge, *cf. Simpson v. Beaver Dam Cmty. Hosp., Inc.,* 780 F.3d 784, 798 (7th Cir. 2015), especially because Yahnke makes the same, unsuccessful arguments he made regarding the Sheriff's first reason for recommending his discharge.

13

is due. *See Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008).[4]

The parties do not dispute that Yahnke had a protected property interest in his continued employment with the Kane County Sheriff's Office pursuant to the relevant Collective Bargaining Agreement ("CBA") and the Kane County Sheriff's Merit Commission Rules and Regulations that made Yahnke a tenured deputy subject to the Merit Commission. (Pl.'s Stmt. Facts ¶¶ 6-10.) Also, the parties do not dispute that Sheriff Perez terminated Yahnke's employment without a hearing. (*Id.* ¶ 33.) Instead, the Sheriff argues that Yahnke decided to pursue arbitration, and therefore, waived his right to a hearing in front of the Merit Commission. The Court turns to the facts underlying the Sheriff's argument.

It is undisputed that under the Merit Commission Rules, a hearing shall commence within 30 days after the Sheriff files a written complaint seeking removal of an employee with the Merit Commission unless the employee waives the 30 day requirement or elects arbitration instead of a hearing. (*Id*. ¶¶ 10-11; R. 150-5, Pl.'s Ex. E, Kane County Sheriff's Merit Comm., Rules & Regs., Art. VIII, § 2(B).) On October 15, 2008, the Merit Commission sent a letter to Yahnke advising him that it had received copies of Sheriff Perez's charges against him and the Sheriff's request that the Merit Commission terminate Yahnke's employment. (Defs.' Stmt. Add'l Facts ¶ 3.) The Merit Commission's October 15, 2008, letter also notified Yahnke that it had scheduled

---

[4] Yahnke's argument that public employers must always provide their employees with a pre-deprivation hearing is misplaced. *See Swank v. Smart,* 898 F.2d 1247, 1256 (7th Cir. 1990) ("Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards to which due process entitles a tenured public employee."); *see also Chaney v. Suburban Bus Div. of Regional Transp. Auth.*, 52 F.3d 623, 628 (7th Cir. 1995) ("grievance procedures created by collective bargaining agreements can satisfy the requirement of due process") (citation omitted).

14

a hearing on Sheriff Perez's charges against him for October 27, 2008. (*Id.*) Also on October 15, 2008, the Union filed a grievance on behalf of Yahnke requesting a stay of discipline until the outcome of his grievance in arbitration that addressed the central issue of the OPS investigation. (Pl.'s Stmt. Facts ¶ 17.) It is undisputed that there was no hearing on the October 15, 2008, grievance. (*Id.* ¶ 18.) Instead, it is undisputed that in an October 22, 2008, letter to the Merit Commission, Yahnke's Union lawyer stated that Yahnke wished to arbitrate his October 15, 2008, grievance. (*Id.* ¶ 24.) Undersheriff Ziman and Sheriff Perez, however, were under the impression that Yahnke intended to arbitrate the Sheriff's recommendation to terminate Yahnke's employment, as well as the October 15, 2008, grievance. (*Id.* ¶¶ 20, 24.) Indeed, in an October 28, 2008, Agreed Order before the Kane County Sheriff's Merit Commission, Yahnke waived his right to proceed before the Merit Commission to determine the validity behind the termination charges that Sheriff Perez filed against him and elected to proceed to arbitration under the CBA. (Defs.' Stmt. Add'l Facts ¶ 5.)[5] The Agreed Order also stated that due to Yahnke's election to pursue arbitration, Sheriff Perez withdrew his charges against Yahnke and terminated all proceedings before the Merit Commission. (R. 163-5, Defs.' Ex. 5, 10/28/08, Agreed Order.)

Viewing the facts and all reasonable inferences in Yahnke's favor, Sheriff Perez has presented proof of the absence of material fact, namely, that Yahnke entered into an Agreed Order and waived his rights to a hearing in front of the Merit Commission. Even if Yahnke had

---

[5] The Court takes judicial notice of the Kane County Sheriff's Merit Commission's October 28, 2008, Agreed Order. *See* Fed.R.Evid. 201(b)(2); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004) (taking judicial notice of administrative findings); *Menominee Indian Tribe of Wisconsin v. Thompson,* 161 F.3d 449, 456 (7th Cir. 1998) (judicial notice of reports of administrative bodies proper).

set forth evidence creating a genuine issue of material fact that he did not waive his right to a hearing before the Merit Commission, the Court's inquiry does not end there. Rather, the Court must look to the process that Yahnke was due under the circumstances.

Breaking down Yahnke's claim in simple terms, he argues that a required procedure was in place pursuant to the Merit Commission Rules and the CBA regarding his discharge and that Sheriff Perez did not follow these required procedures. Yahnke's claim is thus based on Sheriff Perez's random and unauthorized conduct. *See Leavell,* 600 F.3d at 806. "Because such misconduct is inherently unpredictable, the state's obligation under the Due Process Clause is to provide sufficient remedies after its occurrence, rather than to prevent it from happening." *Michalowicz*, 528 F.3d at 535. Under these circumstances, the Court must determine whether there were adequate post-deprivation state law remedies available to Yahnke. *See id*. at 534.

First, there is an adequate post-deprivation remedy pursuant to the Illinois Administrative Review Act, 735 ILCS 5/301, *et seq*., under which Yahnke could have filed a complaint in state court challenging the decision to terminate his employment if it qualified as the Merit Commission's administrative decision. *See, e.g., Rodriguez v. Sheriff's Merit Comm'n of Kane County,* 218 Ill.2d 342, 349-50, 843 N.E.2d 379, 381, 300 Ill.Dec. 121, 123 (Ill. 2006). In the alternative, because there is evidence in the record that Yahnke decided to arbitrate his termination pursuant to the CBA, he could have moved to compel arbitration in connection with his termination like he did in regard to his October 15, 2008, grievance. *See Policemen's Benevolent Labor Cmte. v. County of Kane, et al.*, 2012 Ill.App. Unpub. LEXIS 2006, 2012 Ill App (2d) 12009-U (2d Dist. Aug. 17, 2012) (unpublished). In fact, Yahnke did attempt to compel arbitration regarding the Sheriff's termination of his employment, but the Illinois

16

Appellate Court concluded that Yahnke had failed to properly initiate the grievance process pursuant to the CBA in the first instance. *See id.* at 2012 Ill App (2d) 12009-U ¶¶ 16, 17. In addition, Yahnke filed a later state court complaint to compel arbitration regarding his termination. (R. 181-6, Pl.'s Ex. F, Mot. Consolidate.) As Yahnke explains, after discovery in the state court matter, he moved to voluntarily dismiss the complaint that the Kane County Circuit Court granted on April 9, 2012.

Nonetheless, it is not enough that Yahnke did or did not avail himself of a state law remedy, he must also show that the state law post-deprivation remedy was inadequate. *See Bettendorf v. St. Croix County,* 631 F.3d 421, 427 (7th Cir. 2011) (citing *Hudson v. Palmer,* 468 U.S. 517, 539, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). A state law remedy is inadequate if it is meaningless or nonexistent. *See Michalowicz*, 528 F.3d at 535 (quoting *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990) (en banc)). Here, Yahnke has failed to argue, let alone establish, that the applicable state law remedies are meaningless. Instead, as the Illinois Appellate Court determined, Yahnke failed to properly file a grievance concerning his termination in the first instance. It is well-settled that federal courts "do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate." *Veterans Legal Def. Fund v. Schwartz,* 330 F.3d 937, 941 (7th Cir. 2003). Therefore, Yahnke's due process claim fails because adequate state law remedies provided the process he was due under the circumstances. *See Simmons v. Gillespie,* 712 F.3d 1041, 1044 (7th Cir. 2013) ("the federal entitlement is to process, not to a favorable outcome"). The Court therefore grants Defendants' summary judgment motion and denies Plaintiff's partial summary judgment motion as to Count II and dismisses Count II with prejudice.

**III.     Illinois Retaliatory Discharge Claim — Count III**

Yahnke's remaining claim in this lawsuit is his Illinois retaliatory discharge claim under the Illinois Workers' Compensation Act, as alleged in Count III of the Complaint. *See Clemons v. Mech. Devices Co.,* 184 Ill.2d 328, 704 N.E.2d 403, 235 Ill.Dec. 54 (1998). Because the Court is dismissing, with prejudice, Yahnke's claims over which the Court has original jurisdiction, namely, his First Amendment retaliation claim and Fourteenth Amendment due process claim, the Court, in its discretion, declines to exercise supplemental jurisdiction over his remaining state law claim. *See* 28 U.S.C. § 1367(c).

As the Seventh Circuit instructs, "[t]he supplemental-jurisdiction statute provides that the district court 'may decline to exercise supplemental jurisdiction' over state-law claims if the court 'has dismissed all claims over which it has original jurisdiction.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012) (quoting 28 U.S.C. § 1367(c)(3)). Although the decision to relinquish supplemental jurisdiction is within the district court's broad discretion, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co.*, 672 F.3d at 479 (citation omitted).

Because the Court declines to exercise supplemental jurisdiction Yahnke's retaliatory discharge claim, the Court grants Defendants' summary judgment as to Count III and dismisses Count III without prejudice.

## CONCLUSION

For these reasons, the Court grants Defendants' motion for summary judgment [146], denies Plaintiff's motion for partial summary judgment [147], and dismisses Counts I and II with prejudice and Count III without prejudice. The Court denies Plaintiff's motions to strike as moot [152, 164].

**Dated:** April 30, 2015

                                                  **ENTERED**

                                                  _____
                                                **AMY J. ST. EVE**
                                                **United States District Court Judge**